## BABBITT *v.* DOTTEN.

*(Circuit Court, N. D. Illinois.  May 11, 1882.)*

1. EQUITY—FRAUD—EVIDENCE.

    Allegations of fraud should always be clearly proved, either directly or neces-sarily, by circumstances which clearly lead the mind of the court to the conclu-sion that a fraud has been perpetrated; and as the allegations of fraud in this case are not clearly made out, the bill must be dismissed.

2. SAME—DISMISSAL OF BILL.

    Where a bill in equity is founded on alleged fraudulent business transac-tions, and the evidence fails to sustain the charge, the bill must be dismissed, though it appears that defendant owes debts growing out of the business as to which the fraud is alleged.

*Charles Lawrence,* for plaintiff.

*F. W. Becker,* for defendant.

DRUMMOND, C. J.   In 1868, Dotten, the defendant, entered into the employment of the plaintiff, acting as his agent in the distribution and sale of soaps in the north-western states.   He had at that time a fixed compensation of so much a day, which, in 1869, was increased; and when an office, in 1870, was furnished to the defendant, Dotten, at Chicago, he still continued as the agent of the plaintiff at a further increased compensation per day.   Dotten made sales of the soap, collected the money due, paid the freight and various expenses, and made remittances from time to time to the plaintiff of the proceeds of the sales.   There was also a mode adopted by the parties of advertising the quality and value of the soap which the plaintiff had for sale by making a distribution of it gratuitously at houses, and in different cities and towns of the north-west.   The bill alleges that Dotten, in the transaction of business connected with his agency, was guilty of various fraudulent acts, by which the plaintiff was cheated out of the money that was actually due him.   After Dotten had become the agent of the plaintiff he formed a partnership with the other two defendants, Smith and Sherwood, in what is termed "the veneer business," and the bill alleges that there was a fraudulent conspiracy by all the defendants to deprive the plaintiff of what was due to him, and that the firm of J. Willard Smith & Co. was used for the purpose of effectually carrying out the object of this conspir-acy.   It will be seen, therefore, the *gravamen* of the bill throughout consists of fraudulent transactions on the part of Dotten, and of the other defendants in connection with him.   If the questions in this case were whether Dotten, the defendant, was indebted to the plaintiff as

his agent because he had not paid over all that was due to him, and whether an account should be taken for the purpose of accomplishing that object, there would not, perhaps, be much difficulty in reaching a conclusion; but the ground upon which application is made to a court of equity in this case is that of fraud, and not that Dotten has had and received money of the plaintiff which he ought to pay over to him.

The litigation is of long standing, and when the bill was filed an application was made to the court for the appointment of a receiver to take possession of the individual and partnership goods of the defendants, who was accordingly appointed by the court and took possession of the property, and it was sold apparently at a sacrifice, its administration having been attended with great, and, it would seem, rather unnecessary, expense. It may be stated at the outset that there does not appear to be sufficient evidence to connect Smith or Sherwood with any conspiracy with Dotten to defraud the plaintiff, and as to them the bill must be dismissed.

The main difficulty arises as to the character of the different transactions of Dotten with the plaintiff. It is charged that he has not accounted for the value of all the soap he sold, and the proceeds of which were received by him, after deducting the necessary expenses and his compensation. I am inclined to think that this proposition, under the evidence, is sound, and that it states the true legal relation of the parties to each other; but the question is whether, in the in the change which took place as to that part of the business, there was a fraud perpetrated by Dotten for the purpose of cheating the plaintiff. The goods were furnished by the plaintiff to the defendant, and the shipments made upon bills or invoices which were sent at the time the goods were forwarded. The defendant claims that, from the manner in which this part of the business was transacted between him and the plaintiff, an agreement was made under which he was only accountable to the plaintiff for the goods at the prices named in the bills forwarded; and there can be no doubt there is much in the testimony to justify this view. Accounts were furnished by him upon this basis, and there was also much in the conduct of the plaintiff, or the agents who were acting for him, tending to show an acquiescence in this mode of transacting the business and of stating the accounts; and it is unquestionable that, when this method was adopted by the defendant, the distinct statement was not made, as perhaps it should have been, reminding Dotten of the original basis upon which the parties stood to each other, and that he was simply an agent employed to sell goods at a fixed rate of compensation per day. For example, it

might have been said that there was no particular object in stating the value of the goods, so far as Dotten was concerned, or for any other purpose than simply to let him know what the cost of the goods was; and that did not affect, in any degree, his rate of compensation; but that had been already a matter of adjustment and settlement, which had not been changed. So that, conceding, as I think the weight of the evidence establishes, that Dotten continued to be employed at a fixed daily compensation, still I cannot say that it clearly makes out, in this part of the case, that this change in the mode of rendering the accounts, and fixing the compensation of the defendant, was fraudulent on his part. He may possibly have considered that, owing to the great increase of business and of the sales created by his labors and exertions, he was entitled to a higher compensation than the *per diem* allowed him by the original contract, and that he would state the account in a different form from that which was authorized by their contract, for the purpose of ascertaining whether the plaintiff would acquiesce in it; and, in any event, it was competent for the plaintiff or his agents to protest at once and decidedly as to this mode of stating the accounts, and it was not done as early and as clearly as it ought to have been.

It is charged, also, that fraud was practiced in the distribution of what is termed in the evidence "Give-Away Soap;" that is to say, that the amount of soap distributed for the purpose of advertising its quality was really much less than was contained in the account rendered by Dotten. It is almost impossible to arrive at the truth, in the conflict of evidence upon this point, amid the vagueness with which the different statements are made by the witnesses. Undoubtedly there was great opportunity for a misstatement as to the quantity of soap thus actually distributed, if the defendant was engaged in fraudulent practices; but it must be remembered that the very character of the business was such as to create great difficulty in ascertaining with entire accuracy what the distribution in this way actually was. Many men had to be employed. There is some evidence tending to show that these agents thus employed did not always act faithfully in the distribution of the soap, but there does not seem to be any connection, clearly proved, even if this be so, of Dotten with this supposed unfaithfulness on the part of the agents.

It may be admitted that there are several circumstances shown in the evidence which are of a somewhat suspicious character. It was unfortunate that Dotten, while employed as the agent of the plaintiff, should have formed a copartnership in another kind of business with

Smith and Sherwood. Even admitting that he did not take an active part in the business of the firm, still, the natural effect was to divert his attention somewhat from the business of his agency for Babbitt, and it was a great mistake, to say the least, that, as the agent of Babbitt, he made the firm of J. Willard Smith & Co. his financial agents, depositing money with them, which apparently was mingled with the money of the firm, and drawing checks on their funds for the payment of the expenses growing out of this agency. This, of itself, was calculated to create suspicion on the part of the plaintiff, but it does not affirmatively appear from the evidence that there was anything fraudulent in this, either on the part of Dotten, or of Smith or Sherwood; and it does not appear that the plaintiff was directly a loser by this mode of transacting the business.

One of the difficulties connected with this case is that many of the witnesses testified under the influence of strong feeling, and with a bias which may be presumed to color more or less the character of their testimony. There is something in the manner in which Dotten himself gives his evidence which is not entirely satisfactory. It may be, however, the result of the exceptionally strong feeling he had in the case. A quarrel had sprung up between him and one of the principal witnesses of the plaintiff, which may be presumed to affect, to a greater or less extent, the testimony of the latter; and then there was a criminal prosecution against Dotten, founded on the alleged frauds set forth in the bill in this case, which was ultimately unsuccessful, and which has undoubtedly aggravated the feelings of the parties and witnesses, and is calculated to impair, more or less, the effect of the statements made by many of them. The result of the whole matter is that the allegations of fraud are not made out so clearly as they should be in order to entitle the plaintiff to a decree. Allegations of fraud should always be clearly proved, either directly or necessarily, by circumstances which clearly lead the mind of the court to the conclusion that a fraud has been perpetrated.

Growing out of the main controversy in this case there have been presented several claims against the firm of J. Willard Smith & Co., viz.: Graham, Dorsett & Co., for $629.95; that of J. C. Scott & Co., $215.53; and the Sewing Machine Cabinet Company, $396.07. These claims seem to be established as valid claims against the company; and as the receiver took possession of all the property of the company, and it has been sold, there seems to be no good reason why these claims should not be paid out of the funds which came into the hands of the receiver.